UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

DAWN STRANG, *et al.*,            )
                                  )
         Plaintiffs,              )
                                  )
    v.                            )     No. 05 C 50108
                                  )
R.J. REYNOLDS TOBACCO CO., *et al.* )
                                  )
         Defendants.              )

MEMORANDUM OPINION AND ORDER

FREDERICK J. KAPALA, District Judge:

Plaintiff Dawn Strang, on behalf of her late husband, Daniel M. Strang, filed a 40-count complaint against various tobacco companies pursuant to the Illinois wrongful death and survival statutes. The complaint alleges that Mr. Strang died from lung cancer that allegedly was caused by smoking cigarettes that were designed and manufactured by defendants. Following this court's order on defendants' motion to dismiss, the only remaining claims are for fraudulent misrepresentation, negligent design, and pre-1969 negligent failure to warn.

Currently before the court is defendants' motion for summary judgment, in which defendants argue that plaintiff has no evidence to support the necessary elements of her remaining claims and, in addition, that all of her claims are barred by the applicable two-year statute of limitations, 735 ILCS 5/13-202. For the reasons discussed below, the motion for summary judgment is granted.

I. BACKGROUND

Mr. Strang was born in 1948 and began smoking when he was 10 or 11 years old. By the time he met plaintiff in 1964, Mr. Strang was smoking two or more packs of cigarettes per day. Mr.

Strang smoked several brands of unfiltered, full-flavored cigarettes, including Lucky Strike, Camel, and Pall Mall, which were manufactured by defendants.

Since at least 1970, Mr. Strang had a cough that both he and plaintiff would refer to as a "smoker's cough." Mr. Strang and plaintiff both thought that the cough was caused by his smoking. Shortly after Mr. Strang developed his cough (as well as 10 or 15 more times thereafter), plaintiff told him that he needed to quit smoking and that smoking was hazardous to his health, to which Mr. Strang responded, "I know." Mr. Strang did not quit smoking, however, and by the mid 1980's he was coughing so much that his cough would interfere with other things he was doing. Around that time, plaintiff told Mr. Strang that he needed to stop smoking in order to cure his cough, and Mr. Strang understood that his cough was caused by his smoking.

On May 29, 2003, a CT scan of Mr. Strang's chest and a needle biopsy were performed, resulting in a diagnosis of lung cancer. Mr. Strang died as a result of his lung cancer on July 16, 2003.[1] Plaintiff filed the instant lawsuit on May 24, 2005.

## II. ANALYSIS

### A. Statute of Limitations

Defendants argue that all of plaintiff's remaining claims are barred by the Illinois statute of limitations for personal injury, which requires that a claim for personal injury "shall be commenced within 2 years next after the cause of action accrued." 735 ILCS 5/13-202.[2] The parties dispute

---

[1] Defendants dispute whether Mr. Strang's lung cancer was the primary cause of his death, citing other possible causes including possible adrenal cancer. For purposes of this motion, drawing all justifiable inferences favor of plaintiff, the nonmovant, the court will assume that Mr. Strang's death was caused by his lung cancer.

[2] Although an action under the Illinois Wrongful Death Act has its own two-year limitations period that begins to run at the time of the decedent's death, 740 ILCS 180/2, the statute of

whether the causes of action in this case accrued in 1970, when Mr. Strang developed a cough that he attributed to smoking, as defendants contend, or in 2003, when Mr. Strang was diagnosed with lung cancer, as plaintiff claims.

In Illinois, the "discovery rule" is used to determine the date of accrual for latent injuries, or injuries that are not caused by a specific, traumatic event. DeLuca v. Liggett & Meyers, Inc., No. 00 C 7781, 2003 WL 1798940, at *11 (N.D. Ill. Apr.4, 2003). The discovery rule provides that "the cause of action accrues when the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another." Nolan v. Johns-Manville Asbestos, 85 Ill. 2d 161, 169 (1981).[3] Although helpful to injured persons, the discovery rule does not provide indefinite tolling of the limitations period and does not require perfect knowledge. Instead, "[t]he limitations period begins to run when the plaintiff realizes, or should have realized, that he suffered an injury, not when he 'realizes the consequences of the injury or the full extent of the injury.'" DeLuca, 2003 WL 1798940, at *11 (quoting Wilson v. Devonshire Realty, 307 Ill. App. 3d 801, 806 (1999)); see also Golla v. Gen. Motors Corp., 167 Ill. 2d 353, 364 (1995) ("This court has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered. Rather, our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes

---

limitations for personal injury is nevertheless both relevant and determinative because "a wrongful death action is premised on the deceased's potential, at the time of death, to initiate an action for injury," Wyness v. Armstrong World Indus., Inc., 131 Ill. 2d 403, 411 (1989).

[3] Although it is normally a question of fact when a party knew or should have known both of an injury and its probable wrongful cause, where, as in this case, only one conclusion may be drawn from the undisputed facts it becomes a question of law that can be decided by the court on summary judgment. See Nolan, 85 Ill. 2d at 171.

the consequences of the injury or the full extent of her injuries.").

In this case, the court concludes that the cause of action accrued, and the statute of limitations ran, long before plaintiff filed suit. In doing so, the court is persuaded by the opinion in DeLuca, a case in which the relevant facts are virtually indistinguishable from the instant case.[4] In DeLuca, the decedent began smoking in 1946 when he was 16 years old, and he smoked cigarettes for most of his life. 2003 WL 1798940, at *1. By the early 1980's, the decedent had developed a daily cough which he referred to as a "smoker's cough." Id. at *11. There also was evidence in the record that the decedent had wanted to quit smoking in 1975 because he was suffering from shortness of breath and becoming winded. Id. In June 2000, the decedent was diagnosed with terminal lung cancer. Id. at *1. In November 2000, he filed a lawsuit against the tobacco companies claiming, inter alia, negligent failure to warn. Id. In December 2000, the decedent died and his wife replaced him as the plaintiff in the case and filed an amended complaint. Id.

In DeLuca, while discussing the defendant's motion for summary judgment based on the statute of limitations, the court noted that "the benchmark date is not when [the decedent] was diagnosed with lung cancer, but rather the time at which he became aware of a smoking-related injury to his health." Id. at *11. The court concluded, as a matter of law, that the decedent knew or reasonably should have known that he had an injury caused by cigarette smoking prior to two years before he brought suit in November 2000, and therefore, was barred from bringing suit by the statute of limitations. Id. at *11. As the court reiterated later in its opinion, "the evidence

---

[4] Contrary to defendants' statement in their reply brief, the DeLuca opinion, a Northern District of Illinois opinion written by Judge Kennelly, is not controlling in this matter because it is a district court case. However, the court does find it to be highly persuasive given the similarity between the two cases.

4

indisputably demonstrates that [the decedent] suffered a smoking injury to his health long before [the diagnosis of lung cancer]; accrual of his claim did not await the ultimate diagnosis of lung cancer." Id. at *13.

In this case, the court agrees with the reasoning in DeLuca and concludes that Mr. Strang knew or reasonably should have known that he had an injury caused by cigarette smoking as early as 1970, when he developed what he referred to as a "smoker's cough," and certainly no later than the mid 1980's when he was coughing so much that his cough would interfere with other things he was doing. Moreover, this court already has said as much in its order on defendants' motion to dismiss, in which the court concluded that "[Mr. Strang's] injury occurred long before he was diagnosed with cancer." Although Mr. Strang certainly did not know the full extent of his injury at the time he developed a "smoker's cough," he was aware that he had been injured to some extent and that the injury was caused by smoking cigarettes. At that point, his claims for personal injury accrued and are now barred by the statute of limitations because they were not brought within two years of the date of accrual.

In response to the motion for summary judgment, plaintiff argues that the causes of action did not begin to accrue until Mr. Strang was diagnosed with lung cancer in 2003, and therefore, were brought before expiration of the limitations period. In support of this claim, plaintiff relies on Nolan and VaSalle v. Celotex Corp., 161 Ill. App. 3d 808 (1987). As discussed below, neither of these cases persuade the court to ignore DeLuca, which held under factually similar circumstances that accrual of the causes of action based on injuries from smoking did not await the ultimate diagnosis of lung cancer.

In Nolan, the decedent was employed as an asbestos insulator from 1941 to 1973. 85 Ill. 2d

5

at 164. In 1957, the decedent became aware of shortness of breath and increasing difficulty climbing stairs. Id. A chest x-ray was taken, which revealed that he did not have tuberculosis, but indicated that he had "lung problems." Id. The decedent consulted two other doctors who confirmed that he had "lung problems." Id. at 164-65. In 1965, the decedent went back to his doctor when he noticed that his earlier complaints were becoming more pronounced. Id. at 165. After undergoing several tests, the decedent was diagnosed with pulmonary fibrosis. Id. According to the decedent, he was not told that there was any causal connection between his condition and his occupation. Id. Sometime after 1968, the decedent's union began publishing "green sheets" which detailed the relationship between exposure to asbestos materials and lung problems, although the decedent was not sure when he first read these materials. Id. at 165-66. Finally, in 1973, after further symptoms developed, the decedent was diagnosed with asbestosis and tuberculosis and was told that his condition was caused by exposure to asbestos materials at work. Id. at 166, 171. He stopped working immediately and filed his lawsuit within two years of the diagnosis. Id. at 166.

After discussing the discovery rule and the purposes of the statute of limitations, the Nolan court concluded that summary judgment based on the statute of limitations was improper because the evidence was conflicting as to whether and when the decedent knew that he was injured by his exposure to asbestos at work. Id. at 171-72. The court noted that, because of the disputed evidence, this was a question of fact to be decided by the trier of fact. Id. at 172.

In Nolan, summary judgment was improper because it was not clear from the undisputed facts when the decedent knew that he had been injured by his exposure to asbestos. Although he was initially diagnosed with "lung problems," and then later diagnosed with pulmonary fibrosis, it was not clear whether he knew or reasonably should have known that these injuries were wrongfully

6

caused by the asbestos exposure at any time before his diagnosis of asbestosis in 1973. Because there was a disputed issue of fact, summary judgment was held to be improper. In contrast, in this case, there is no dispute that Mr. Strang developed what he considered to be a "smoker's cough," and that he knew this was caused by his smoking cigarettes. As a result, there is no question that Mr. Strang's claims accrued long before suit was filed, and this issue can be decided on summary judgment as a matter of law.

Plaintiff's reliance on <u>VaSalle</u> is likewise unavailing because the majority opinion in that case appears to be in conflict with general principles of Illinois law, and therefore, is not persuasive as to how Illinois courts would decide the issues in the instant case. In <u>VaSalle</u>, another asbestos case, the decedent was diagnosed with asbestosis in 1972. 161 Ill. App. 3d at 809. Several years later, in 1979, the decedent was diagnosed as suffering from lung cancer caused by his exposure to asbestos. <u>Id.</u> He died from the lung cancer a month later, and the plaintiff brought suit on his behalf in 1980 seeking damages related to the lung cancer. <u>Id.</u> at 809-10. Citing <u>Nolan</u>, the court denied the defendants' motion for summary judgment based on the statute of limitations, concluding that there was no evidence that the decedent knew any earlier than 1979 that he had asbestos-originating lung cancer and that this condition had been caused by exposure to asbestos products. <u>Id.</u> at 811. The court further concluded that there was no evidence that the decedent learned in 1972 that the asbestosis was caused by defendants' wrongful acts, and that, in any event, "the legal injury [the decedent] discovered upon diagnosis of asbestosis is separate and distinct from the legal injury he discovered upon diagnosis of lung cancer caused by asbestos exposure." <u>Id.</u> at 811-12.

The court finds that the majority opinion in <u>VaSalle</u> is not persuasive because it misapplies the discovery rule. As explained by the dissent in <u>VaSalle</u>, "once the existence of an injury and its

7

wrongful cause are known, the fact that the full extent of the plaintiff's damages are not immediately ascertainable will not toll the limitations period." Id. at 814 (Jiganti, J. dissenting). The position of the dissent is more in line with subsequent holdings of the Illinois Supreme Court. See Golla, 167 Ill. 2d at 364 ("This court has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered. Rather, our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries.").[5]

In this case, although Mr. Strang's "smoker's cough" and his lung cancer are arguably separate injuries, they both share the same alleged causation – smoking cigarettes. Because the discovery rule does not require a party to know the full extent of his injuries before a cause of action will accrue, the court maintains, in accordance with DeLuca, that Mr. Strang's claims accrued in the 1970's or 1980's, well before the instant lawsuit was filed, even though he had not yet been diagnosed with lung cancer. Accordingly, the claims in plaintiff's complaint are barred by the statute of limitations, and defendants are entitled to summary judgment.

B. No Evidence to Support the Remaining Claims

Because the court has concluded that summary judgment is proper based on the statute of limitations, the court need not address the merits of plaintiff's remaining claims. Nevertheless, even if the court were to assume that the statute of limitations did not preclude plaintiff's claims, summary judgment still would be proper for defendants. As discussed below, plaintiff has failed

---

[5] In diversity cases, this court "must make a predictive judgment as to how the supreme court of the state would decide the matter if it were presented presently to that tribunal." Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 635 (7th Cir. 2002). Accordingly, the court is not bound to follow an appellate court decision, especially if it appears to be inconsistent with how the state supreme court would rule.

to present sufficient evidence in support of her claims for fraudulent misrepresentation, negligent design, and pre-1969 negligent failure to warn.

First, as to the claim for fraudulent misrepresentation, there is no evidence that Mr. Strang ever saw, heard, or read any false statement from the defendants that he relied upon when deciding to start smoking.[6] This lack of evidence is primarily the result of the fact that Mr. Strang cannot testify, and nobody else has personal knowledge of why Mr. Strang began smoking when he was 10 or 11 years old.[7] Furthermore, plaintiff's reliance on a 1994 congressional subcommittee report, which outlines and documents the sales and marketing efforts of the tobacco industry since 1953, does not save her claim. The fact that the tobacco industry, including defendants, advertised their products at the time that Mr. Strang began smoking does not provide evidence that Mr. Strang actually saw any advertisements referred to in the subcommittee report, that the advertisements Mr. Strang may have seen contained false statements of material fact, or that he relied on any false statements to his detriment.

Second, plaintiff's claim of negligent design also fails for lack of evidence. As the Illinois Supreme Court has explained:

---

[6] There is some evidence from the deposition testimony of Darla Biggin which suggests that Mr. Strang liked a commercial he saw for Camel cigarettes and may have switched to Camels after seeing that ad. However, in addition to the fact that Biggin does not remember what year the ad was shown or whether the ad caused Mr. Strang to switch to Camels, there also is no evidence that this commercial contained any false statements. As such, this scintilla of evidence is insufficient to defeat summary judgment.

[7] In her deposition, plaintiff testified that Mr. Strang's mother would send him to the store to get cigarettes for her, and that Mr. Strang would either "get some for himself or take a few from hers." This evidence suggests that running errands for his motion or following his mother's example may have been the impetus to Mr. Strang's decision to smoke. In any event, this evidence does not in any manner demonstrate that Mr. Strang began smoking as a result of fraudulent misrepresentations by defendants.

9

> [T]o establish a negligence claim for a defective design of a product, a plaintiff must prove that either (1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity.

Blue v. Envtl. Eng'g, Inc., 215 Ill. 2d 78, 96 (2005). Plaintiff has presented no evidence, and does not have any expert testimony, to establish the first prong – that the design of defendants' cigarettes deviated from the standard of care that other manufacturers followed.[8] As for the second prong, plaintiff appears to focus exclusively on her allegation that cigarettes are an inherently dangerous product.[9] This allegation, even if true, is insufficient to make out a prima facie case of negligent design. In fact, this same argument was rejected by the court in DeLuca because it would "equate fault with the manufacture of a product that the legislature has not banned." 2003 WL 1798940, at *10. As the court in DeLuca correctly reasoned: "it is far from clear that Illinois would impose negligence liability on cigarette manufacturers simply because they made and sold a legal product, albeit a harmful one, without any specific breach of ordinary care." Id.

Finally, plaintiff's claim for pre-1969 negligent failure to warn also fails because plaintiff cannot establish that a failure to warn was the proximate cause of Mr. Strang's injuries. "To establish proximate causation, [plaintiff] must demonstrate that an adequate warning would have

---

[8] In their motion, defendants argue that plaintiff's claim of negligent design necessarily fails because she has not demonstrated through an expert opinion the availability of an alternative feasible design. While expert opinion typically is necessary to establish liability under the first prong, see Phillips v. The Raymond Corp., No. 99 C 2152, 2006 WL 1156375, at *4 (N.D. Ill. Apr. 25, 2006), the lack of expert testimony does not prohibit plaintiff from attempting to proceed under the second prong identified in Blue.

[9] Plaintiff does raise claims for negligent failure to warn in separate counts, which will be discussed later.

10

been read and heeded, and would have prevented the injuries in question." Blaue v. Kissinger, No. 03 C 9025, 2006 WL 2092380, at *5 (N.D. Ill. July 24, 2006). Here, the evidence in the record suggests that Mr. Strang knew that smoking cigarettes was hazardous to his health in 1966 when warnings first appeared on cigarette packages, and that he did not make any effort to quit smoking as a result of reading this, or any subsequently given, warning. Plaintiff has neither offered any evidence to show that Mr. Strang would have read and heeded this 1966 warning if it had been given earlier when he began smoking cigarettes at the age of 10 or 11, nor proposed an alternative warning that would have been more effective, and therefore, plaintiff has failed to meet her burden on an essential element of her cause of action. See Phillips v. The Raymond Corp., No. 99 C 2152, 2006 WL 1156375, at *6 (N.D. Ill. Apr. 25, 2006).

In sum, even if the statute of limitations did not bar plaintiff's remaining claims, those claims would independently fail at summary judgment based on a lack of evidence to make out the necessary elements for each cause of action. Accordingly, summary judgment is proper in favor of defendants.

### III. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment is granted. As such, defendants' motion to strike plaintiff's response to their Local Rule 56.1 statement of material facts is denied as moot. This case is closed.

Date: November 18, 2008

ENTER:

_____
FREDERICK J. KAPALA
District Judge